**SLIPPERY ROCK AREA SCHOOL DISTRICT, Petitioner**

v.

**PENNSYLVANIA CYBER CHARTER SCHOOL, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2008.
Decided June 4, 2009.

Andrea C. Parenti, Butler, for petitioner.

Shon K. Worner, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, SIMPSON, Judge, LEAVITT, Judge and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

This is a petition for review of an order of the Secretary of Education which granted the motion of the Pennsylvania Cyber Charter School (Charter School) to dismiss an objection to the Secretary's deduction of funds from the state subsidy of Slippery Rock Area School District (Slippery Rock). In this appeal we are asked to decide whether a local school district is obligated

to fund educational programs offered by charter schools which the district has exercised its discretion not to offer in its own public schools. For the reasons set forth below, we hold that it does, and affirm the order of the Secretary.

The Charter School Law[1] provides for the funding of charter schools by requiring that an amount based upon a statutory formula per student be paid to the charter school by the school district of residence of each such student. If a school district fails to do so, the Secretary of Education must deduct that amount from state payments to the district. *See* Section 1725–A(a)(2)–(5) of the Charter School Law, 24 P.S. § 17–1725–A(a)(2)–(5).

On October 25, 2006, the Secretary of Education notified Slippery Rock that it had deducted funds from Slippery Rock's state payment and made them payable to the Charter School because Slippery Rock had failed to pay the Charter School for the full amount required under the formula. Specifically, it had refused to pay for a four-year old kindergarten student enrolled in the Charter School. On November 21, 2006, Slippery Rock wrote a letter to the Department objecting to the Secretary's deduction and requesting a hearing if necessary. Slippery Rock pointed out that the Public School Code requires schooling be provided only to six-year old students, and its discretionary kindergarten program is available only for students who are at least five years old. Thus it argued that the deduction was inaccurate because it included the four year old,

whom the district was not obligated to educate. *See* Section 501 of the Public School Code of 1949 (Public School Code), 24 P.S. § 5–501.

Following additional correspondence, the Secretary appointed a hearing officer. The Charter School filed a motion to dismiss Slippery Rock's objection. As there were no disputed factual issues, the hearing officer certified the case to the Secretary for disposition before any hearing occurred. On January 8, 2008, the Secretary issued an order and opinion, granting the Charter School's motion to dismiss Slippery Rock's objection. Slippery Rock has now filed a petition for review with this Court.

■ We first consider the Charter School's argument that the issue raised by Slippery Rock in this appeal is not cognizable.[2] Section 1725–A(a)(6) of the Charter School Law allows an objecting school district to be heard "concerning whether the charter school documented that its students were enrolled in the charter school, the period of time during which each student was enrolled, the school district of residence of each student and whether the amounts deducted from the school district were *accurate.*" *See* Section 1725–A(a)(6) of the Charter School Law, 24 P.S. § 17–1725–A(a)(6) (emphasis added). That section further provides that within 30 days after the Secretary makes a deduction from a public school to be made payable to a charter school, the public school district "may notify the [S]ecretary that the deduction made from State payments to the

1. Act of June 19, 1997, P.L. 225, *as amended,* 24 P.S. §§ 17–1701–A — 17–1751–A. The Charter School Law appears in Article XVII–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101 — 27–2702.

2. While the Charter School characterizes this as a lack of standing, it is plain that the

school district has a direct, substantial and immediate interest in whether it must fund the education of the four year old student and is aggrieved by the Secretary's order. Rather, the substance of the argument is that the Charter School Law limits the scope of issues which may be challenged.

district under this subsection is *inaccurate.*" *Id.* (emphasis added). Section 1725–A(a)(6) was added to the Charter School Law in 2002 "to permit the school districts to challenge, within [30] days, the accuracy of the payment made by the Secretary and require the Secretary to provide the school districts an opportunity to be heard." *Vill. Charter Sch. v. Chester Upland Sch. Dist.,* 813 A.2d 20, 26 (Pa. Cmwlth.2002).

Based upon this statutory language, the Charter School is claiming that the school district may challenge only the accuracy of the calculations regarding the number of resident students enrolled and the dollar amount deducted per student.[3] We disagree. Under the Charter School's interpretation, a school district would be left with no administrative recourse if a charter school "enrolled" parents in evening classes on gourmet cooking or ballroom dance and attempted to count them in their student body total. Presumably, if the eligibility of the students for whom a charter school sought funding could not be determined by the statutory administrative process, a remedy would lie in equity or mandamus, but then the expertise of the Department in adjudicating the matter would be lost. Rather, we believe that whether the total amount of the deductions is *accurate* encompasses the question whether the enrolled students are legitimate subjects of school district funding. Accordingly, we find no error in the Secretary's entertaining and deciding the school district's objection.

■ On the merits, Slippery Rock claims that the Secretary committed legal error[4] in interpreting the Charter School Law to require Slippery Rock to pay for the kindergarten education of the four-year old student, raising the same arguments presented to the Department. It points out that the Public School Code does not require schools to provide kindergarten; instead, it requires schools to educate only children who have reached the age of six. Section 501 of the Public School Code, 24 P.S. § 5–501. *Goldsmith v. Lower Moreland Sch. Dist.,* 75 Pa. Cmwlth. 288, 461 A.2d 1341 (1983). Nonetheless, the Public School Code permits schools to offer kindergarten to resident children, including four year olds; it provides that the Board of School Directors in a school district *"may* establish ... kindergartens for children between the ages of four and six years." Section 503 of the Public School Code, 24 P.S. § 5–503 (emphasis added). Because the establishment of kindergarten for children between the ages of four to six is discretionary, and Slippery Rock exercises its discretion not to accept four year old kindergartners, it contends that it does not have to pay for the Charter School to educate such students. In other words, it is not obligated to pay a charter school to educate children whom the district is not obligated to accept and would not admit in its own public schools.

However, as the Secretary noted, the Charter School Law was enacted to "establish and maintain schools that operate independently from the existing school district structure" to, among other things, "[i]ncrease learning opportunities for all pupils" and "[p]rovide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system." Section 1702–A(2), (5) of the Charter School Law,

---

**3.** The Secretary did not address the Charter School's argument that Slippery Rock lacked "standing." *See* Secretary's Opinion at 7 (January 8, 2008).

**4.** Because this appeal raises only questions of law, our review is plenary.

24 P.S. § 17–1702–A(2), (5). A charter school is an "independent public school established and operated under a charter from the Department of Education...." Section 1703–A of the Charter School Law, 24 P.S. § 17–1703–A; *see also Mosaica Acad. Charter Sch. v. Dep't of Educ.*, 572 Pa. 191, 813 A.2d 813 (2002) (legislature went to great lengths to permit establishment of charter schools operating independently from existing school district structure). The Secretary stated:

> Cyber charter schools are subject to the Chapter 11 regulations of the State Board of Education. 24 P.S. [§]17–1749–A(b)(2). According to Chapter 11, if "kindergarten is provided, the board of school directors shall establish the district's minimum age of entry to kindergarten. The minimum entry age to kindergarten may not be less than 4 years, no months, before the first day of the school term." 22 Pa.Code § 11.14. Other sections in Chapter 11 also refer to "board of school directors" and "school board" and state the following[:]
>
> • Upon written parental request, and in accordance with the policies of the district's board of school directors, students may be excused from school for religious holidays observed by bona fide religious groups. 22 Pa.Code § 11.21(a).
>
> • Each school board shall adopt, and distribute yearly to parents, written rules governing student admissions, attendance, absences and excusals, that are in conformity with this chapter. 22 Pa.Code § 11.41(b).
>
> • Each school board shall adopt a written policy permitting students to be excused for participation in agricultural fairs in conformity with section 1329(b) ... 22 Pa.Code § 11.41(c).
>
> Because cyber charter schools are subject to Chapter 11, in order to comply with the CSL and prevent an absurd result, the references to "board of directors" and "school board" must be read to mean "board of trustees of the cyber charter school".[1] Without this modified reading, these sections of Chapter 11 would allow a school district's board of directors to determine policies at the cyber charter school regarding attendance, religious holidays, absences, etc. This would not comply with the intent of the CSL because it would allow school districts to dictate the policies of the cyber charter school.
>
> ....
>
> In addition, the CSL provides that the board of trustees of a charter school has the authority to decide matters related to the operation of the school, including, but not limited to, curriculum and operating procedures. 24 P.S. § 17–1716–A(a). If a school district can dictate the policies of a cyber charter school, the cyber charter school is not operating independently from the existing school district structure. In addition, if a school district can determine a cyber charter school's admission policies, such as the entry age for kindergarten students, a cyber charter school cannot increase learning opportunities for students and provide parents and students with expanded choices in the types of educational opportunities that are available within the public school system.
>
> ---
> [1] Section 4.41 of the State Board of Education regulations also provides that kindergarten programs must provide 2½ hours of instruction each day, unless a school district, *including charter schools*, obtains the Department's prior approval for an alternative kindergarten program. Thus, it is clear that a cyber charter school may operate a kindergarten program.

Secretary's Opinion at 4–6 (January 8, 2008) (footnote in original). We agree with this reasoning. Moreover, we must

afford the Secretary's interpretation of the Charter School Law great deference. *Sch. Dist. of Philadelphia v. Independence Charter Sch.*, 774 A.2d 798 (Pa.Cmwlth. 2001). Unless the Secretary committed an error of law in interpreting the Charter School Law, we will affirm his decision. *See* Administrative Agency Law, 2 Pa.C.S. § 704.

*Palisades School District v. Lehigh Valley Charter School for the Performing Arts*, EDU 2005–SLAP–0064037 (January 27, 2006), cited by the school district, is inapposite. In *Palisades*, a student completed three years of high school at Palisades High School, a public school, and then attended two years at Lehigh Valley Charter School, even though at the conclusion of the first such year, he had completed all requirements for graduation set by the charter school, the school district and the Commonwealth. The Department concluded that Palisades was not required to fund the student's education beyond the fourth year of high school, noting that there is no statutory or regulatory provision that contemplates a student's attending a fifth year of high school after he has completed all the requirements for graduation in four years. *Palisades*, at 5–6. Thus public funding of such post graduate programs was not warranted. In contrast, the Public School Code and regulations promulgated thereunder specifically allow schools to establish a kindergarten program and to admit four year olds, at the discretion of the Board. *See* Section 503 of the Public School Code, 24 P.S. § 5–503; 22 Pa.Code § 11.14. Clearly then, the General Assembly contemplated the public funding of such students, and the Secretary properly distinguished *Palisades* from the instant case.

In sum, because the Charter School Law is intended to "[p]rovide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system," Section 1702–A(5) of the Charter School Law, 24 P.S. § 17–1702–A(5), we believe the General Assembly specifically intended that the trustees of charter schools would sometimes, perhaps often, exercise the options given them regarding discretionary programs in a manner different from that of the local school districts. It would frustrate this purpose if the school districts were required to fund only those programs of the charter school which mirrored the programs offered by the school district. Therefore, we hold that Section 1725–A does not provide a public school with an exemption or exception from its responsibility to pay a charter school when the school district does not provide a discretionary program that the charter school provides. Thus, under Section 1725–A(a)(2), Slippery Rock was required to compensate the Charter School for the four-year old who was enrolled in its kindergarten program.

Accordingly, we affirm.

### O R D E R

AND NOW, this 4th day of June, 2009, the order of the Secretary of Education in the above captioned matter is hereby AFFIRMED.