# THE COMMONWEALTH COURT OF PENNSYLVANIA

Victory Bank,                              :
                         Petitioner        :
                                           :
             v.                            :    No. 236 F.R. 2014
                                           :    ARGUED:  April 10, 2018
Commonwealth of Pennsylvania,              :
                         Respondent        :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**                      **FILED:  July 17, 2018**


Victory Bank (Taxpayer) petitions for review of an order of the Board of Finance and Revenue (Board) denying Taxpayer's petition for refund of sales tax paid on purchases of computer hardware, canned computer software, and services. We affirm.

In pertinent part, the stipulated facts are as follows.  Taxpayer is a commercial bank in Pennsylvania, with headquarters in Limerick and an additional office in Wyomissing.  (Stipulation of Facts (S.F.), Nos. 2 and 3.)  It purchased the disputed items from three sellers and used all of the hardware and software "for its protection or convenience in conducting financial transactions."  (*Id*., Nos. 50, 57, and 63.)  "For each of the contested transactions, the consideration which [Taxpayer] paid included state sales tax in the amount of [6%] of the purchase price for each

item purchased." (*Id*., No. 25.)  In addition, Taxpayer did not tender an exemption certificate to any of the sellers.  (*Id*., No. 26.)

In November 2012, Taxpayer filed a petition with the Department of Revenue's Board of Appeals (BOA) seeking a refund of sales tax in the initial estimated amount of $50,000, plus applicable interest, paid during the period of November 26, 2009 to November 26, 2012.  (*Id*., No. 5.)  It later amended the requested amount to $17,801.61.  (*Id*., No. 7.)  The BOA denied Taxpayer's request and the Board affirmed.  In its petition for review to this Court, Taxpayer seeks a refund of sales tax paid across eighty-four petitioned-transactions in the aggregate amount of $14,775.35, plus applicable interest. (*Id*., No. 14.)

The sole issue that Taxpayer raises on appeal is as follows:[1]

> Whether a bank's purchases of computer hardware equipment and its software components, as well as services thereto, are excluded from sales tax pursuant to the [Department's] Financial Institution Security Equipment Regulation [FISE regulation] . . . because the sellers or their designees installed the computer hardware and the bank used the computer hardware and software for its protection or convenience in conducting financial transactions.

Taxpayer's Brief at 4.

Promulgated in 1978 and amended in 1993, the FISE regulation, upon which Taxpayer relies, provides:

---

[1] With *de novo* review, this Court is entitled to the broadest scope of review when considering the propriety of an order of the Board because we function essentially as a trial court, even though we hear these cases in our appellate jurisdiction.  *Norris v. Commonwealth*, 625 A.2d 179, 182 (Pa. Cmwlth. 1993); *see generally* Pa. R.A.P. 1571.

(a) *General.* This ruling pertains to the sale, installation and repair of security equipment utilized by financial institutions.

. . . .

(b) *Definitions.* The following words and terms, when used in this section, have the following meanings, unless the context clearly indicates otherwise:

*Financial institution*--A corporation or association, such as a bank, a bank and trust company, a trust company, a savings bank, a mutual banking association, a savings and loan association, a finance company, a credit union, or other similar institution, which maintains a place of business in this Commonwealth.

*Installation*--An attachment or affixation of security equipment to real estate by means of one of the following:

. . . .

(iii) Wire which is integrated into an electrical system.

*Security equipment*--Systems, devices and equipment, and their components, utilized by a financial institution for its protection or convenience in conducting financial transactions.

(c) *Sales and installation.* Sales and installation shall conform with the following:

*(1) A sale of security equipment which is also installed, as defined in subsection (b), by the seller or [its] designee is a construction contract.* The seller-installer may not charge sales tax of the Commonwealth to his customer upon the contract price. Rather, the seller-installer, as a construction contractor, is considered to be the consumer of property transferred in connection with the construction contract. He shall pay the applicable sales or use tax upon his purchase price of the installed equipment . . . .

3

. . . .

(d) *Straight sale.* A straight sale is one in which security equipment of a type which does not require installation, as defined in subsection (b) is transferred, or one in which any type of security equipment is sold directly to a customer without installation by the seller or a designee. A straight sale is a taxable transfer of tangible personal property, and the seller shall register with the Department, to collect tax upon the total purchase price paid by a customer for security equipment, and to remit the tax collected to the Department.

61 Pa. Code § 46.9 (emphasis added).

It is undisputed that Taxpayer meets the definition of a financial institution and that its computer system meets the FISE definition of "security equipment." The disputed issues here are first, whether plugging its computer system into an electrical outlet amounts to installation, defined by subsection (b) as "attachment . . . by means of . . . wire which is integrated into an electrical system"; and second, whether the FISE regulation has been superseded by statute, as the Department argues. We need not address the first of these arguments, because we agree with the Department that statutory changes described below have superseded at least the definition of "construction contract" in subsection (c)(1), upon which Taxpayer's argument is grounded.

When the Department promulgated the FISE regulation, there was no statutory definition of the term "construction contract," so if the equipment was "installed" within the definition of subsection (b), it amounted to a "construction contract" and the obligation to pay sales tax fell on the contractor/installer and not the purchasing financial institution under subsection (c)(1). Later, the General Assembly enacted a statutory definition of "construction contract" in Act 45 of

4

1998,[2] thereby amending Section 201 of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201. The definition at that time, however, was limited to transactions with exempt entities. It extended the statutory definition to all entities in Act 89 of 2002.[3] The Tax Code now defines "construction contract" as: "A written or oral contract or agreement for the construction, reconstruction, remodeling, renovation or repair of real estate or a real estate structure." Section 201(nn) of the Tax Code. Clearly, the statutory definition of "construction contract" departs from the one found in the FISE regulation.

"It is axiomatic that a statute is law and trumps an administrative agency's regulations." *Commonwealth v. Kerstetter*, 62 A.3d 1065, 1069 (Pa. Cmwlth. 2013), *aff'd*, 94 A.3d 991 (Pa. 2014). In addition, "[w]here there is a conflict between a statute and a regulation which purports to implement the statute's provisions the regulation must give way." *Success Against All Odds v. Dep't of Pub. Welfare*, 700 A.2d 1340, 1351 n.6 (Pa. Cmwlth. 1997) (citations omitted). Here, Section (c)(1) of the FISE regulation presents such a conflict in that the statutory definition for "construction contract" is inconsistent with the regulation's definition. Moreover, the fact that the FISE regulation was not amended or repealed is of no moment. *See Success Against All Odds*, 700 A.2d at 1350-51 (holding that, where a regulation relates to the interpretation of a self-executing act of assembly,[4] Section 204 of the Commonwealth Documents Law[5] permits an administrative agency to omit or modify the publication requirements). Therefore, Taxpayer may not rely

---

[2] Act of April 23, 1998, P.L. 239, No. 45.

[3] Act of June 29, 2002, P.L. 559, No. 89.

[4] "Self-executing statutes are those which are mandatory in nature and require no further legislative action in order to become effective." *Success Against All Odds*, 700 A.2d at 1351.

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. § 1204.

5

upon Section (c)(1) to argue that the seller of its computer system and not Taxpayer owes the sales tax.

As the Commonwealth asserts, in the absence of an applicable statutory exclusion or exemption, the sales at issue, by default, warrant a 6% sales tax under Section 202(a) of the Tax Code, 72 P.S. § 7202(a). *See Plum Borough Sch. Dist. v. Commonwealth*, 860 A.2d 1155, 1159 (Pa. Cmwlth. 2004), *aff'd per curiam*, 891 A.2d 726 (Pa. 2006) (holding that, "[w]hen an exemption does not apply, there is no statutory crack to fall through . . . ."). More specifically, Section 202(a) of the Tax Code imposes a 6% tax on the "sale at retail" of "tangible personal property" and certain enumerated services. A "sale at retail" is defined to include "[a]ny transfer for a consideration, of the ownership, custody or possession of tangible personal property," as well as "[t]he rendition for a consideration of the service of repairing, altering, . . . or cleaning tangible personal property." Section 201(k)(1) and (4) of the Tax Code. "Tangible personal property" is defined as "[c]orporeal personal property including, but not limited to, goods, wares, [and] merchandise . . . ." Section 201(m) of the Tax Code. In the present case, the computer hardware, canned software, and related services at issue are such property and thus Taxpayer's purchases are "sales at retail" to which sales tax must be applied consistent with Section 201(k) and (m) of the Tax Code. *See Dechert LLP v. Commonwealth*, 998 A.2d 575, 585-86 (Pa. 2010) and *Graham Packaging Co., L.P. v. Commonwealth*, 882 A.2d 1076, 1086-87 (Pa. Cmwlth. 2005) (holding that tangible personal property includes canned computer software delivered electronically). The Tax Code requires the vendor of such property (here, the seller of computer equipment to Taxpayer) to collect sales tax from the purchaser thereof upon each separate "sale at retail" that the vendor makes, precisely as was done in the present case.

This conclusion is reinforced by longstanding judicial interpretations of the Tax Code in cases not involving financial institutions, where the FISE regulation had no application, such as *Commonwealth v. Beck Electric Construction, Inc.*, 403 A.2d 553 (Pa. 1979)[6] and *Northeastern Pennsylvania Imaging Center v. Commonwealth*, 35 A.3d 752 (Pa. 2011). In *Beck*, which involved a corporation that sold and installed electrical machinery and equipment with such sales and installation of equipment being completed pursuant to electrical construction contracts, the Court adopted the method-of-attachment test in ascertaining whether a vendor was required to collect a sales tax on tangible personal property or if a contractor was required to pay a use tax on real property constructed in a construction contract. In holding that the transformers, rectifier, and switchgear were not subject to use tax as they were not part of the real estate because they could be relocated with no damage, the Court focused on the character of the object, its ability to be installed and removed, its degree of portability, and whether it maintained its functional integrity after installation. In *Northeastern*, involving equipment far larger and less mobile than the computers involved here, the Court held that the equipment at issue, medical facilities' MRI and PET/CT scan systems, remained tangible personal property after installation and, accordingly, was subject to sales tax pursuant to Section 202(a) of the Tax Code. In so determining, it resurrected the *Beck* test and observed, *inter alia*, that "[w]hile their size makes them cumbersome, size does not make them part of the building." *Northeastern*, 35 A.3d at 761.

---

[6] This case was partially superseded by Act 45 of 1998, to the extent that it pertained to the application of the sales and use tax to tax-exempt entities like the Commonwealth.

Because Taxpayer was required to pay sales tax on its computer system under the terms of the Tax Code, the Board properly denied its petition for refund.[7]

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[7] We need not here address whether, as the Department seems to argue, that the FISE regulation is superseded in its entirety. Certainly, the critical amendment to the Tax Code, which superseded FISE's preferential definition of "construction contract" and thus operated to eliminate its shifting of the sales tax burden from financial institutions to the vendors of "security equipment," brought the tax treatment of such purchases more clearly in line with general law. However, we are not prepared to state that no circumstances could arise in which FISE would have a practical application. That issue is simply not before us.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Victory Bank, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 236 F.R. 2014 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 17th day of July, 2018, the order of the Board of Finance and Revenue is AFFIRMED.  Unless exceptions are filed within thirty (30) days from entry of this Order pursuant to Pa. R.A.P. 1571(i), this Order shall become final.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge